UNITED STATES v. NINETY–FOUR DOZEN, MORE OR LESS, HALF–GALLON BOTTLES CAPON SPRINGS WATER.

No. 22.

District Court, E. D. Pennsylvania.

Dec. 8, 1930.

Howard Benton Lewis, Asst. U. S. Atty., of Philadelphia, Pa., and John B. O'Donnell, Asst. to Solicitor, Department of Agriculture, of Washington, D. C.

Benjamin M. Golder, of Philadelphia, Pa., for defendant.

## DICKINSON, District Judge.

This record will be found to be in a more or less confused state. This is due to the fact that the libel proceedings are directed against a few bottles of no special value in themselves either commercially or with respect to the public interest. The issue in the case is what the condition of the contents of these few bottles was at the time of shipment in interstate commerce. If, for illustration, the wholesomeness of Capon Springs water is not questioned, the fact that a particular shipment of a few bottles of water might be questioned would be of little concern to any one, especially in view of the fact that, even if the shipment was open to complaint at the time it was made, the lapse of time would have a correcting effect, so that the shipment would be wholesome at the time of hearing and indeed before the time the shipment would reach the market. The trial judge in consequence suggested that the issue be broadened so that the question of what we will call the wholesomeness of Capon Springs water as it came from the Springs and reached the market might be determined instead of the narrow issue of the wholesomeness of the particular shipment. This suggestion was tentatively accepted and the trial proceeded for a time upon this broader issue, but the tentative acceptance of the suggestion was afterwards withdrawn, and the issue confined to the narrow one indicated. The result of it has been that there is in this record evidence bearing upon what we will call the general issue of the whole-someness of Capon Springs water, with which issue we have in strictness nothing to do. There is an unavoidable embarrassment in dealing with a narrow issue, such as that indicated, because of the indirect consequences and effects of a finding.

The grown or manufactured product of a dealer in a food, for illustration, might be wholesome and nutritious and yet a particular shipment have become unfit for food through what might be called accidental circumstances. The condemnation of the particular shipment might none the less have the effect of the inference drawn by consumers that the consumption of any of the product was harmful and the whole trade of the dealer be thus ruined. There might be no justification for the inference, and yet every one knows that to condemn any part of what a dealer is shipping causes the inference to be drawn by the consuming public, the prospective purchasers of the product, that it is all bad.

The Food and Drug Act (21 USCA § 1 et seq.) has a very beneficent purpose, and it is without doubt the duty of the courts to lend their aid to its efficient enforcement. At the same time it would be an unfortunate and unjustified consequence to have the value of the trade in a product wholly destroyed because a small shipment of that product had in some way become contaminated. We are all more or less finicky about the things we take into our stomachs. The slightest suspicion of careless or unsanitary methods in production or distribution might absolutely destroy the value of a large and important trade. The moral to be drawn from this is that a court should declare no condemnations without careful thought being given to the consequences which we have indicated. The wholesomeness of a food or drink cannot even be made the subject of a discussion without the possibility of consequences which would be deplored.

There is one part of the complaint made against this particular shipment which may, however, be freely discussed. The claimant here deals in a drinking or bottled water, which is also possibly bought with the thought that it has likewise some medicinal qualities. The water is known as Capon Springs water, which is taken from a spring in West Virginia. It is charged that the water as put upon the market is misbranded, evidenced by the labels on the bottles in which the water is marketed.

Section 8 of the act (21 USCA §§ 9, 10) defines the meaning of the term "misbrand-

ed." The "article" is misbranded if "the package or label which shall bear any statement, design, or device regarding such article, or the ingredients or substances therein which shall be false or misleading in any particular."

It is charged that Capon Springs water is marketed under a label which describes it to be "Healing Water," thereby implying that the drinking of it will have curative and therapeutic results, when in fact the water is more accurately described as drinking water, having only the properties of what might be called ordinary spring water.

█ There is no meaner or more despicable fraud than that of persuading those afflicted with a disease to buy something on the promise that it will cure them or help them when the hope aroused is wholly delusive and the statements made fraudulently misleading. Any one would feel the call to aid in the suppression of frauds of this character. There is nothing in this case which would justify the finding that Capon Springs water is medicinal in the sense indicated. When one is speaking of a drinking water, it is difficult to draw the line between an effect which is merely beneficial and one which is medicinal. Any one may have a prejudice in favor of the water from some favorite well or spring and believe they are benefited by drinking it. So believing, they would not be condemned for recommending it to others, nor do we think the commercial exploitation of it would come within the condemnation of this act of Congress so long as the line of fraud was not crossed. One has only need to recur to the literature of his youth to recall the incident of the visit of Leather Stocking to the spring from which the famous Saratoga water is now taken, and to the tribute which is paid in "Westward Ho!" to tobacco. There is scarcely any locality in the country in which there is not a spring about the waters of which there are traditions more or less well authenticated that the waters of the spring were a favorite drink of the Indians. The languages of the different tribes of American Indians had this in common that they were figurative and abounded in metaphors. The names given to individuals ascribed to them high-sounding qualities. There is said to be such a tradition connected with the Capon Springs. This water was so highly valued by the Indians that it was given the name Capon, which, in the language of the particular tribe which inhabited the surrounding country, is said to have had the meaning of healing or healing water. There

is an advertising value in such a tradition, the benefit of which the claimants have undoubtedly sought to get. For some reason, which is inscrutable, many people attach a value to Indian medical lore. Any one who has a nostrum, for which he desires to create a commercial demand, can do so successfully by panoplying some one in red paint and feathers and proclaiming the nostrum to be a favorite medicine among the Indians. This may be done in such a way as that it is clearly a fraudulent imposition and denounced as an offense against this act of Congress. On the other hand, it may be taken in such a way as to negative the thought of a real fraud and be nothing more than an advertising device to call attention to the thing which is offered for sale.

█ We see nothing in the label in this case which would justify a finding that it was fraudulent. The form of the label is

"Capon Springs Water known to the Catauaba Indians as 'Ca-Ca-Paon' Healing Water.

"2 Quarts Net—Bottled at the Springs. (Then follows an analysis in type too small to be conveniently read.)

"Natural Mineral Spring Water Famous for Two Centuries. Capon Water Co. Capon Springs, W. Va."

There is doubtless an advertising value in the stuttering orthography given to the words Catawba and Capon, but this label is as close an adherence to the truth as is customary in commercial labels, and speaks the truth as nearly as would be expected of any advertiser of a commercial product. We would not find as a fact in what measure of esteem the Capon Springs water was held by the Indians, but there is that in the record of this case which would support the statement that the word Ca-Ca-Paon means in the Indian dialect healing water. Whether it does or not we would not find from the evidence, but we do find that there is evidence that the word is said to have this meaning.

The count in the libel of misbranding is not sustained.

█ Some of the literature put out by the claimants may be characterized as not only florid, but is almost laughable in its over statements. Every one has heard, however, of extravagant claims made by the advocates of a liberal use of ordinary drinking water. This is epitomized in the slogan "flood your kidneys." This has no reference to any particular drinking water, but applies to any

water. All the extravagant claims made for drinking Capon Springs water are made for the liberal use of any drinking water. There is no reason to doubt that those who advocate the liberal use of drinking water honestly believe the practice to be beneficial. We are not prepared to make any finding that it is not, and we are far from finding that all the benefits claimed will be conferred. The point we have in mind to make is that the act of Congress does not interdict any one from advocating the liberal use of drinking water nor from enforcing the advocacy of it by extravagant predictions of the benefits which will follow. If this can be done in the case of water as water, we do not see how the claimants can be interdicted from saying the same thing about Capon Springs water.

■■■ The next count in the libel is based upon the sixth clause of section 7 of the act (21 USCA § 8). As before stated, this feature of the libel cannot even be discussed without consequences which, although unintended, might none the less be very harmful to the trade of the claimants. As before also stated, we are restricted in any findings which we may make to the few bottles of water which were seized.

We make the finding that this water at the time of the trial was free from the criticisms made of it and will continue to be free. We make this finding because the claimants have introduced evidence through the testimony of experts to this effect, which is uncontradicted, and also because the offer was made by the claimants to submit the water to analysis and miscroscopical examination for the government. This offer was declined and the testimony itself objected to because the question is asserted to be not what the condition of the water now is, but what it was at the time of seizure, and it would seem to be an admitted truth that the water would clear itself after a comparatively short time. The claimants assert that, in order to assure the wholesomeness of the water, it was their practice to keep it in storage for such a length of time as would leave no doubt of its wholesomeness before it was put upon the market. Whether this practice was in all cases followed it would not clear the claimants of the charge of shipping unwholesome water, if it was at the time of shipment unwholesome, even if the unwholesomeness were afterwards removed. Congress evidently had in mind the injustice which might be done through a charge of unwholesomeness of a particular shipment by being extended in the public mind to a condemnation of the entire product. The regulations are also mindful of this. It is because of this provided that, before any proceedings of condemnation are instituted, the interested persons shall be notified and given the opportunity "to show cause why the matter should not be referred for a prosecution as a violation of the Federal Food and Drug Act." The purpose of this procedure is manifest. It was, however, for reasons which, in the opinion of the officers of the Bureau justified the omission, not followed in the instant case. We think this should have been done, and, because of the omission to do it, that this count of the libel cannot be sustained. The purpose of the regulation in consonance with the intent of Congress is that the reputation of a food product shall not be blasted by the institution of proceedings without a full opportunity afforded to the parties concerned to convince the Department, if they can, that such proceedings should not be instituted. If the product be one, the shipment, of which in interstate commerce, should be interdicted, proceedings may be instituted and the shipment stopped, but, if the condemnation of the product is due to something which may be corrected, and the product itself does not call for condemnation, the proceedings need not be instituted.

This leads to a comment, in the making of which we may be going beyond our judicial duty, but which nevertheless we feel impelled to make. The comment is that the difficulties in which the claimants find themselves are largely of their own making. Apparently they have failed to appreciate the gravity and importance of the duties which the officials of this Bureau are called upon to perform. Instead of recognizing that the activities of the officials are not only justified but demanded of them in furtherance of the protection of the public health, the claimants seem to have resented the intervention of the officials as an unwarranted intrusion into the private business of the claimants. Realizing, as of course the claimants did, how much harm to their trade a charge of unwholesomeness against the Capon Springs water would have, whether the charge was well founded or ill founded, they resented the acts of the officials as if this injury was intended. This attitude on their part was wholly unjustified..

The Department needs no vindication at the hands of this court, but we feel free to express our absolute confidence in the good faith of the action taken and that it was done solely in the performance of duty and for the protection of the public health.

The resentment of the claimants against the intervention of the Department and the general attitude of the claimants was interpreted as meaning a defiance of the Department and a challenge to them "to do their worst." Because of this, the authorities felt justified in proceeding without any preliminary hearing. This feeling is natural enough and excusable in itself, but so far forth from justifying any refusal or failure to give the claimants the preliminary hearing called for by the regulations should have induced a careful regard to all the rights of the claimants. The Department doubtless viewed the provision for a preliminary hearing as applying only to criminal prosecutions, but there is the same reason for extending it to proceedings in rem.

Another comment is, we think, likewise within our province to make. It is that many of the claims made of benefit from the drinking of Capon Springs water are so extravagant as to justify the characterization of being ridiculous. No trial judge is in a position to pit his judgment of the benefit to the seller of certain commercial practices against the judgment of commercial men. We venture, however, the statement that those who buy Capon Springs water or other spring water do so because they wish a water to drink which is what is called "pure" and which is palatable. Very few, if any, users of any of the spring waters would be induced to buy them in the hope that they will prove to be the panacea which, in the literature put out by the claimant company, this water is claimed to be.

We are not prepared to say that the tradition that this water was highly regarded by an extinct tribe of Indians in the far distant past may not have some real advertising value, and, as we have already observed, we think the claimants can avail themselves of the statement of what some Indian, now dead for many generations, may have thought of the water from this particular spring, but extravagant claims to a panacea should be dropped.

A final comment is that the parties to this cause, as if upon the preliminary hearing provided by the regulations, should meet and reach a working agreement such as would assure to the authorities a compliance with the law and leave the claimants free to conduct their business undisturbed by any complaints from the Department. We see no difficulty in reaching such a working agreement. The claimants are bound to comply with all the requirements of the law, and we know that all the authorities wish is assurance that there will be such compliance. What is called for is a get-together attitude.

The conclusion reached is that the libel should be dismissed, and a form of decree in accordance herewith may be submitted.

We make the following specific findings of fact and conclusions of law:

### Findings of Fact.

1. The Capon Springs water is a natural water obtained from springs near Capon Springs, W. Va.

2. There is evidence, sufficient to justify the claimants in making reference to it of a tradition in the neighborhood of the springs that the word "Capon" is a corruption of the word "Ca-Ca-Paon," meaning, in the dialect of the Catawba Tribe of Indians, "Healing Water." There is no evidence, however, that the word ever had this meaning in spite of the tradition to that effect.

3. No hearing in the nature of a rule to show cause called for by the regulations was given to the claimants, but, on the contrary, they were refused all information and opportunity to correct the information upon which the libelant had based its libel.

### Conclusions of Law.

1. The label used in this case by the claimants is not a misbranding within the meaning of the act of Congress on the subject.

2. The count in the libel based upon clause 6, section 7, of the act of Congress, is dismissed because of the failure to grant the claimants the preliminary hearing allowed by the regulations.

3. The libel should be dismissed.