## UNITED STATES v. FIVE CASES OF CAPON SPRINGS WATER.

District Court, S. D. New York.
Feb. 13, 1945.

James B. M. McNally, U. S. Atty., of New York City (Stanley H. Lowell, Asst. U. S. Atty., of New York City, and James B. Goding, Atty., Federal Security Agency, of Boston, Mass., of counsel), for libelant.

William M. Kilcullen, of New York City, for Andrew P. St. Thomas and Capon Spring Water Co. and Louis L. Austin and Virginia H. Austin, copartners, doing business as Capon Springs and Farms, claimants.

CONGER, District Judge.

Libellant, the United States of America seeks herein to confiscate a certain quantity of Capon Springs Water which it has seized.

The libel states that this water, shipped in interstate commerce, was misbranded in that, in violation of the Federal Food, Drug, and Cosmetic Act, 21 U.S.C.A. § 352 (a), the label on the bottles containing the water contained statements which were false and misleading.

The following statements appearing on the labels are alleged to be false and misleading and to constitute misbranding:

"Rebuilds as it Cleanses * * *"

"The Indians Called It Ca-Ca-Pa-On—'Health Water' * * *"

"Known to physicians as alkaline, because it contains by nature those elements needed to counteract *acidity*."

"* * * beneficial in restoring the normal activity of the kidneys and bowels."

"Use according To a Natural Law of Health * * *"

"For the best results * * * drink 2 glasses on rising, 2 more during the morning, 2 during the afternoon and 1 or 2 at night * * *"

The libel, after alleging that these statements are false and misleading continues— "said articles when so consumed will not exert such effect nor produce effects essentially different from those produced by the consumption of similar quantities of ordinary drinking water."

The parties responsible for the bottling and shipment of the water have appeared and answered herein.

The amended answer herein denies any misbranding.

The fact that the waters were shipped in interstate commerce is not denied.

The first and second defense in the amended answer set up the defense of res adjudicata. These defenses concern two proceedings heretofore had in connection with Capon Springs Water. There can be no question but that the water involved in those proceedings is the same water with which we are concerned here.

By these defenses, claimants allege that the truth of the statements on the label herein have been finally determined in claimants' favor in two actions heretofore had and that said prior final decisions are res adjudicata determinative of the issues as to the truth or falsity of said statements.

The second or later proceeding (second defense) was brought on or about March 3, 1936, before the Federal Trade Commission. The respondents in that case were the same respondents, their privies or predecessors in title now before this court.

The proceeding was commenced pursuant to the provision of an Act of Congress creating a Federal Trade Commission (approved September 26, 1914) 15 U.S.C.A. § 55(a). The gravamen of the complaint in that proceeding was that Respondents were guilty of falsely advertising their product in booklets, circulars and other written matter.

The pertinent section of 15 U.S.C.A. § 55(a) reads as follows.:

"The term 'false advertisement' means an advertisement, other than labeling, which is misleading in a material respect; * * *."

The precise charge is set forth in Paragraph Two and Paragraph Three of the libel. Paragraph Two in part reads as follows:

"Respondents, in the course and conduct of their business as aforesaid, distribute and circulate, among prospective purchasers of their said water, booklets, leaflets, circulars, and other written matter which contain many statements concerning the curative qualities of respondents' said water. Many of said statements are purportedly made by doctors and laymen, and the remainder by the respondents. In said booklets, leaflets, circulars, and other written matter, respondents falsely represent and imply that said water will cure, or is beneficial in the treatment of, many of the diseases, ailments, afflictions, and conditions which may be present or exist in the human body.

"Among the diseases, ailments, afflictions, and conditions named by the respondents in their said booklets, leaflets, circulars, and other written matter, so distributed and circulated among prospective purchasers of their said water, as diseases, ailments, afflictions, and conditions which their said water will cure, or is beneficial in the treatment of, are the following * * *" Then follows a long list of diseases too numerous to repeat, among which are kidney troubles, kidney pains, nephritis, bladder trouble, catarrhal affections of the stomach, hyperacidity, constipation, irregular bowels.

Paragraph Three reads as follows:

"Respondents, in said booklets, leaflets, circulars, and other written matter, so distributed and circulated among prospective purchasers of their said water, falsely represent and imply that their said water acts 'like magic'; 'cures almost everything,' 'aids digestion'; 'restores energy'; is 'beneficial to general health'; 'keeps you fit'; 'keeps you well'; 'that it has eliminated tired feeling'; 'maintains healthy digestive tract'; that it has 'improved hearing'; is 'indispensable to health'; 'acts as a natural tonic'; 'restores mental alertness and vigor'; 'will help every living thing'; assures 'All year round health and long life'; 'supplies every one of the 16 elements in body'; and contains 'valuable medicinal properties.'"

"In truth and in fact respondents' said water not only has not acted and does not act like magic, but has not acted and does not act at all on the human body in any different manner than does any pure, potable water, nor does it contain any elements or medicinal properties in sufficient quantities to render it different from, or any of greater benefit than, any pure, potable water, and its use has not resulted and does not result in the benefits claimed for it by said respondents as above set out."

The above allegations were put in issue by the answer of respondents. The issues

were tried before a trial examiner, who made his report upon the facts to Federal Trade Commission, from which the Commission made its "Findings as to the Facts and Conclusions."

A great deal of testimony was taken before the trial examiner. The real issue was as to the therapeutic value of this water. The Commission had as witnesses several chemists and three physicians. The conclusions of these experts was that this water had no special chemical value; that it had no therapeutic value; that it would not cure or benefit the specific diseases mentioned in the complaint; that the mineral content of this water was no greater than that of ordinary tap water; that this water would have no more effect than any good drinking water.

Respondent put in testimony of four physicians who testified among other things that the water did possess therapeutic value and qualities; that it possessed therapeutic values different from other pure potable waters. Each testified that he prescribed this water in cases of illness and disease and told of the curative and beneficial effect by its use.

There was taken in all about 600 pages of testimony.

Some of the literature used by respondent in advertising its product was put in evidence. It will not be necessary to go into the various claims made in these documents. However, a few extracts from one (Ex. 1) are pertinent. This is a small leaflet entitled "Things You Will Observe About Capon Springs Water." I quote some extracts therefrom:

"Refreshes"

\* \* \* \* \* \*

"Cleanses"

"\* \* \* 5. It has prompt action on the kidneys. Capon cleanses your blood of acid and toxic poisons."

"Rebuilds

"6. It regulates the bowels. Capon restores their normal peristaltic action (the eliminative urge).

"7. It acts as a natural tonic. Capon supplies every one of the sixteen elements in your body."

"Why the Indians Called It Ca-ca-pa-on—'Healing Waters'"

"Capon water is known to physicians as alkaline \* \* \*"

These are extracts from one of the pamphlets on which the Commission based its charge of false advertising. The label which is under fire here was put in evidence.

The trial examiner in his Findings has set forth most of the statements thereon under the heading: "Respondent's Representations, Concerning the Efficiency of Capon Water."

Notwithstanding the broadness of the charges and the plethora of evidence, the Commission simply contented itself with a finding against respondent, "that the use of Capon Water *alone* either externally or internally will not cure kidney troubles \* \* \*" (Then follows the long list of diseases which the Commission claims respondent advertised Capon Water would cure or be beneficial in the treatment thereof.)

This was the only respect in which the Commission found that respondent by its advertising had violated the provision of the Federal Trade Commission Act. As a result thereof an order was made by the Commission that respondent in connection with the offer for sale and distribution of its water cease and desist from representing directly or by implication "that the use of the said water alone, either externally or internally will cure kidney troubles \* \* \*," etc. This record indicates that this order was complied with.

It should be noted that the testimony taken before the Commission was of the same nature as that before me. Most of it was by experts (doctors and chemists). It all had to do with the chemical properties and therapeutic value of this water. The experts' testimony taken before the Commission might very well have been substituted for and used in the case before me.

The order of the Federal Trade Commission was affirmed by the United States Circuit Court of Appeals for the Third Circuit. Capon Water Co. et al. v. Federal Trade Commission, 107 F.2d 516.

I have gone at some length into this proceeding before the Federal Trade Commission because I am of the opinion that it is the real serious defense to the issue here.

■ I have come to the conclusion that the decision of the Federal Trade Commission binds the Libellant here.

In the proceeding before the Commission the litigated question was the chemical and

therapeutic value of this water. The Commission had before it the printed material advertising Capon Water. In it were many and rather extravagant statements extolling the virtue and healing property of the water which included the claim that the consumption of this water would cure or be beneficial in the treatment of most of the ills and sicknesses that men and women are afflicted with.

Yet, after a lengthy trial, the Commission simply placed its condemnation upon the claim that this water alone would cure.

It gave its approval, by a failure to condemn all the other claims which included those mentioned in Exhibit 1, and heretofore set forth.

I referred to those statements particularly because they are identical with or approximate the statements on the label which the Government contends are false and misleading "in that said statements represent and suggest that the article of drug when consumed according to directions will rebuild the body while cleansing it of waste matter, will exert an alkaline effect in the body and counteract acid conditions, will serve to restore improperly functioning kidneys and bowels to their normal activity and will exert benefits to health greatly in excess of those derived from the consumption of ordinary drinking water." (Paragraph V of the Libel.)

This is exactly the issue that was tried before the Commission and decided by it as I have pointed out above.

The Government contends that proceedings before the Commission are not a bar to the successful prosecution of this action, because the label was not passed on by the Commission. I think it is correct that the label with the statements thereon was not specifically passed on. However, may it be said that certain statements in the pamphlets may be used and are not false and misleading while the same statements used on the label may not be used and are false and misleading. I think not.

As I see it the underlying issue in this action and in the proceeding before the Commission is the same. That being so, the adjudication in the proceeding before the Commission is determinative of the issue here. United States v. Willard Tablet Co., 7 Cir., 141 F.2d 141, 152 A.L.R. 1194; George H. Lee Co. v. Federal Trade Commission, 8 Cir., 113 F.2d 583.

The fact that in one proceeding we have the Federal Trade Commission as the complainant and in this case we have the United States of America does not alter the situation, neither does the fact that different remedies are sought in each proceeding affect the result. United States v. Willard Tablet Co., supra; George H. Lee Co. v. Federal Trade Commission, supra.

My opinion is fortified by another adjudication as to this same water. United States v. Ninety-Four-Dozen, More or Less, Half-Gallon Bottles Capon Springs Water, 3 Cir., 48 F.2d 378, 380. This adjudication is alleged as res adjudicata to this action and is the first defense in the amended answer herein.

In that proceeding the United States of America by a libel sought to condemn 94 cases more or less, half-gallon bottles of Capon Springs Water. The prosecution was based on the Food and Drug Act, 21 U.S.C.A. § 1 et seq.

This action was tried in the United States Eastern District of Pennsylvania. The complaint in that case was that there was a misbranding on the label. In his opinion Judge Dickinson, who tried the case, set forth the charge as follows:

"It is charged that Capon Springs Water is marketed under a label which describes it to be 'Healing Water,' thereby implying that the drinking of it will have curative and therapeutic results, when in fact the water is more accurately described as drinking water, having only the properties of what might be called ordinary spring water."

The label which was objected to was in form as follows:

" 'Capon Springs Water known to the Catauaba Indians as "Ca-Ca-Paon" Healing Water.

" '2 Quarts Net—Bottled at the Springs. (Then follows an analysis in type too small to be conveniently read.)

" 'Natural Mineral Spring Water Famous for Two Centuries. Capon Water Co., Capon Springs, W. Va.' "

Judge Dickinson in his opinion stated: "We see nothing in the label in this case which would justify a finding that it was fraudulent." In that action the libel was dismissed. Affirmed by the Circuit Court of Appeals for the Third Circuit, 51 F.2d 913.

██ If the adjudication in this case is not determinative of the entire issue here, it is at least determinative of the charge of misbranding as applied to the phrase on the label "The Indians Called it Ca-Ca-Pa-On Health Water." The fact that in this one case have the words "Healing Water" and in the other "Health Water" has no significance. The words are synonymous.

For the reasons which I have given above, I find that the libel should be dismissed.

Settle decree on notice.